UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                                            :

                                                                 :  04 MD 1598 (JSR)

EPHEDRA PRODUCTS LIABILITY                                       :
LITIGATION.                                                      :

----------------------------------------------------------------x

PERTAINS TO ALL CASES


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                                            :

                                                                 :  Chapter 11 Case No.

TL ADMINISTRATION CORPORATION,                                   :
et al. (f/k/a TWINLAB CORPORATION, et al.),                      :  03-15564 (RDD)

                                                                 :

                                                                 :  (Jointly Administered)

                                       Debtors.                  :

----------------------------------------------------------------x


**ORDER CONFIRMING FIRST AMENDED JOINT PLAN
OF LIQUIDATION OF TL ADMINISTRATION CORPORATION
(F/K/A TWINLAB CORPORATION), TL ADMINISTRATION, INC.
(F/K/A TWIN LABORATORIES INC.), AND TL ADMINISTRATION (UK) LTD.
(F/K/A TWIN LABORATORIES (UK) LTD.)
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The First Amended Joint Plan of Liquidation of TL Administration Corporation

(f/k/a Twinlab Corporation), TL Administration, Inc. (f/k/a Twin Laboratories Inc.), and TL

Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.) Under Chapter 11 of the

Bankruptcy Code, dated May 25, 2005 (collectively, and as may be modified and amended, the

"Plan") [1] and the First Amended Disclosure Statement thereto (the "Disclosure Statement")

having been filed with the Court (defined herein) by TL Administration Corporation (f/k/a

Twinlab Corporation) ("Holdings"), TL Administration Inc. (f/k/a Twin Laboratories, Inc.)

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan.  A copy of the Plan is attached hereto as Exhibit "A."

("Laboratories") and TL Administration (UK) Ltd. (f/k/a Twin Laboratories (UK) Ltd.) ("TL

UK" and collectively with Holdings and Laboratories, the "Debtors"), as debtors and debtors in

possession, and as proponents of the Plan within the meaning of section 1129 of title 11 of the

United States Code (the "Bankruptcy Code"); and the Court having entered, after due notice and

a hearing, an Order, dated June 3, 2005, (i) Approving First Amended Disclosure Statement, (ii)

Fixing a Record Date, (iii) Approving Solicitation Packages and Procedures for Distribution

Thereof, (iv) Approving Forms of Ballots and Procedures for Voting on the Debtors' First

Amended Joint Plan of Liquidation, (v) Scheduling a Hearing and Establishing Notice and

Objection Procedures in Respect of Confirmation of the Debtors' First Amended Joint Plan of

Liquidation, and (vi) Authorizing the Retention of Bankruptcy Services, LLC and Financial

Balloting Group LLC as Voting and Tabulation Agents (the "Disclosure Statement Order"); and

the Disclosure Statement and Plan having been distributed to holders of Claims against and

Equity Interests in the Debtors and other parties in interest as provided in the Disclosure

Statement Order; and due notice of the Plan and the Confirmation Hearing having been provided

to holders of Claims against and Equity Interests in the Debtors and other parties in interest in

accordance with the Disclosure Statement Order, the Bankruptcy Code, and the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), as established by the affidavits of service,

mailing, and/or publication filed with the Court (the "Notice Affidavits"),[2] and such notice being

sufficient under the circumstances and no further notice being required; and after full

---

[2] The Notice Affidavits include the following:  (i) Affidavit of Mailing of Rachel Brown, dated
May 3, 2005 (District Court MDL Docket No. 1516); (ii) Affidavit of Kathy Gerber, dated June
15, 2005 (District Court MDL Docket No. 1645); (iii) Certification of Publication, dated June 14,
2005(District Court MDL Docket No. 1665); (iv) the affidavits filed by the Debtors' Court-
appointed voting and tabulation agents, Bankruptcy Services LLC ("BSI") and Financial
Balloting Group LLC ("FBG"), dated July 15, 2005 (as amended July 18, 2005) (the "Voting
Affidavits") (District Court MDL Docket Nos. 1762 and 1763).

consideration of (i) the Debtors' memorandum of law in support of confirmation of the Plan,

dated July 19, 2005 (the "Confirmation Memorandum"), (ii) the declarations in support of

confirmation of the Plan, sworn to by (a) Denis O'Connor (the "O'Connor Declaration"), and (b)

Rex A. Littrell (the "Littrell Declaration"), (iii) the Voting Affidavits regarding the solicitation of

votes and methodology applied to the tabulation of the voting results with respect to the Plan,

and the results of the tabulation of votes, (iv) the limited objection filed by the Ephedra Official

Committee of Ephedra Claimants (the "Ephedra Claimants Committee"), and the joinders thereto

filed by (a) the Plaintiffs' Coordinating Counsel appointed in the above-captioned Multi District

Litigation, (b) Sallie Cooper, (c) Timothy and Sharon Sallis, (d) Joseph Michalowski, (e)

Beverly A. Greenberg, (f) Jason Vickrey, and (g) Kenneth and Patricia Lowen, and (h) the "Barr

Class" (collectively, the "Limited Objections"), (v) the objection filed by Clarence Lackowski

and Christine Felts (the "Lackowski and Felts Objection"); (vi) the objection filed by the "Cirak

Class" (the "Cirak Objection"), and the joinder thereto filed by the "Barr Class" (the "Barr

Objection" and together with the Lackowski and Felts Objection and the Cirak Objection, the

"Consumer Class Action Objections," (vii) the limited oral objection made at the Confirmation

Hearing (as defined below) by the Indenture Trustee (together with the Limited Objections and

the Consumer Class Objections, the "Objections"),  and (viii) the Debtors' responses to the

Objections contained in the Confirmation Memorandum; and the hearing to consider

confirmation of the Plan having been held before the Court on July 21, 2005 (the "Confirmation

Hearing"); and the Court having considered the evidence adduced at the Confirmation Hearing,

including the testimony of Messrs. O'Connor and Littrell, and Ms. Sullivan and Gerber, through

their declarations, which were admitted into evidence, and the exhibits admitted into evidence,

the arguments, representations, and agreements of counsel on the record; and all Objections

having been withdrawn, resolved, granted, or otherwise overruled as set forth herein; and upon

all of the proceedings had before the Court and upon the arguments of counsel and all of the

evidence adduced at the Confirmation Hearing; and the Court having determined based upon all

of the foregoing that the Plan should be confirmed, as reflected by the Court's rulings made

herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing

therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

     A.     <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein

and in the record of the Confirmation Hearing constitute the Court's findings of fact and

conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

     B.     <u>Jurisdiction, Core Proceeding, Venue</u>.  The Court has jurisdiction over the

Debtors' chapter 11 cases, the Confirmation Hearing, the relief requested therein, including

confirmation of the Plan, and the Objections, in accordance with 28 U.S.C. §§ 157(b) and 1334

and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Southern District of New York (the "<u>District Court</u>"), dated July 19, 1984 (Ward, Acting

C.J.).  Consideration of the Confirmation Memorandum, the relief requested therein, and the

Objections thereto is a core proceeding pursuant to 28 U.S.C. § 157(b).  By Order dated March

22, 2005 (the "<u>Reference Order</u>" as amended by the District Court's Status Order (Including

Case Management Order No. 12) dated April 15, 2005 and Status Order (Including Case

Management Order No. 13) dated May 10, 2005), the District Court withdrew the bankruptcy

reference with respect to the Debtors' chapter 11 cases from the United States Bankruptcy Court

for the Southern District of New York (the "Bankruptcy Court" and together with the District

Court, the "Court") and assumed direct jurisdiction over all aspects of the Debtors' chapter 11

cases, except those specifically reserved to the Bankruptcy Court as set forth in the Reference

Order and such additional referrals as the District Court may order in the future. The Reference

Order provided that the District Court and the Bankruptcy Court "shall jointly retain jurisdiction

over, and jointly hear…all hearings on the approval of a disclosure statement and confirmation

of a chapter 11 plan of liquidation." Venue is proper before the Court pursuant to 28 U.S.C.

§§ 1408 and 1409.

        C.      Commencement of the Chapter 11 Cases. On September 4, 2003 (the

"Commencement Date"), each of the Debtors commenced a case under chapter 11 of the

Bankruptcy Code in the Bankruptcy Court (Case Nos. 03-15564 (Holdings), 03-15566

(Laboratories), and 03-15563 (TL (UK))). The Debtors' chapter 11 cases were consolidated for

procedural purposes only and have been jointly administered pursuant to an order of the

Bankruptcy Court dated September 4, 2004. The Debtors continue to manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee

has been appointed in these cases.

        D.      Judicial Notice. The Court takes judicial notice of the dockets of the

Debtors' chapter 11 cases and related and adversary proceedings maintained by the Clerk of the

Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all

orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held

before the Bankruptcy Court during the pendency of the chapter 11 cases. Further, the Court

takes judicial notice of the dockets of the cases in the above-captioned Multi District Litigation

maintained by the Clerk of the District Court, including, without limitation, all pleadings and

other documents filed, all orders entered, and all evidence and arguments made, proffered, or

adduced at the hearings held before the District Court during the pendency of the chapter 11

cases.

      E.    <u>Burden of Proof.</u>  The Debtors have the burden of proving the elements of

sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

      F.    <u>Solicitation and Notice</u>.  On June 3, 2005, the Court entered the Disclosure

Statement Order, which, among other things, approved the Disclosure Statement, finding that it

contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code,

and established procedures for the Debtors' solicitation of votes on the Plan.  The Disclosure

Statement, the Plan, the ballots, the notice of the Confirmation Hearing, and the Disclosure

Statement Order (as applicable, the "<u>Solicitation Materials</u>") were served in compliance with the

Bankruptcy Rules and the Disclosure Statement Order.  As described in the Notice Affidavits

(i) the service of the Solicitation Materials was adequate and sufficient under the circumstances

of these Chapter 11 Cases and (ii) adequate and sufficient notice of the Confirmation Hearing,

and other requirements, deadlines, hearings, and matters described in the Disclosure Statement

Order was timely provided in compliance with the Bankruptcy Rules, the Disclosure Statement

Order, and due process to all parties in interest including.

      G.    <u>Voting</u>.  Votes on the Plan were solicited after disclosure to holders of

Claims against and Equity Interests in the Debtors of "adequate information" as defined in

section 1125 of the Bankruptcy Code.  As evidenced by the Voting Affidavits, votes to accept or

reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent

with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local

Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>").

H.    Conditions Precedent to Confirmation.  As established by, among other things, the O'Connor Declaration, the Debtors have satisfied all conditions precedent to confirmation set forth in section 9.1(b) of the Plan.

I.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the requirements of Bankruptcy Code sections 1122 and 1123 as well as other applicable provisions of the Bankruptcy Code.

J.    Proper Classification (11 U.S.C. §§ 1122).  In accordance with Bankruptcy Code section 1122, the Plan provides for the separate classification of Claims against and Equity Interests in the Debtors based upon differences in the legal nature and/or priority of such Claims and Equity Interests.  Section 3 of the Plan provides for the following six (6) Classes of Claims and one (1) Class of Equity Interests:  Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), Class 3 (Pre-2002 Ephedra PI Claims), Class 4 (2002-2004 Ephedra PI Claims), Class 5 (General Unsecured Claims), Class 6 (Punitive Damage Claims), and Class 7 (Equity Interests).  Each of the Claims or Equity Interests in each particular Class is substantially similar to the other Claims or Equity Interests in such Class.

K.    Designation of Classes of Claims and Equity Interests 11 U.S.C. § 1123(a)(1)).  Section 2 of the Plan provides for the treatment of Administrative Expense Claims and Priority Tax Claims and Section 3 of the Plan designates Classes of Claims and Classes of Equity Interests as required by Bankruptcy Code section 1123(a)(1).

L.    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  As required by Bankruptcy Code section 1123(a)(2), Section 4 of the Plan specifies that Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Pre-2002 Ephedra PI Claims) are unimpaired under the Plan.

M.    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  As required by Bankruptcy Code section 1123(a)(3), Section 4 of the Plan specifies the treatment of the Claims in Class 4 (2002-2004 Ephedra PI Claims), Class 5 (General Unsecured Claims), and Class 6 (Punitive Damage Claims), and the Equity Interests in Class 7 (Equity Interests), each of which is impaired under the Plan.

N.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  Section 4 of the Plan provides that the treatment of each Claim or Equity Interest in each particular Class is the same as the treatment of each other Claim or Equity Interest in such Class, as required by Bankruptcy Code section 1123(a)(4).

O.    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  As required by Bankruptcy Code section 1123(a)(5), the Plan provides adequate means for the Plan's implementation.  Sections 5, 6, 7, 8 and various other provisions of the Plan set forth the means for implementation of the Plan, including the transfer of property to the Ephedra Personal Injury Trust, the appointment of an Ephedra Personal Injury Trustee, the appointment of a Plan Administrator, the methods for distribution to be made under the Plan for payment of claims and the rejection of executory contracts and unexpired leases.

P.    <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>.  Bankruptcy Code section 1123(a)(6) is inapplicable to the Plan because the Plan is a liquidating plan that provides for the dissolution of the Debtors and no distributions to Equity Interests and no distribution of new equity to any party in interest, except to the Plan Administrator and solely for purposes of winding down and liquidating the Debtors.

Q.    <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  Sections 7.2 and 7.3 of the Plan provide for the appointment on the Effective Date of the Plan

Administrator as the sole officer and director to serve the Debtors post-confirmation. This appointment meets the requirements of Bankruptcy Code section 1123(a)(7), is consistent with the interests of creditors and with public policy, and was approved by the Creditors Committee.

R.     Additional Plan Provisions (11 U.S.C. § 1123(b)). The additional provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

S.     Impairment/Unimpairment of Classes of Claims or Equity Interests (§ 1123(b)(1)). As permitted under section 1123(b)(1) of the Bankruptcy Code, Sections 3 and 4 of the Plan render Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Pre-2002 Ephedra PI Claims) unimpaired, and Class 4 (2002-2004 Ephedra PI Claims), Class 5 (General Unsecured Claims), Class 6 (Punitive Damage Claims), and Class 7 (Equity Interests) impaired.

T.     Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)). As permitted under section 1123(b)(2) of the Bankruptcy Code, Section 8 of the Plan provides for the rejection of executory contracts and unexpired leases of the Debtors not previously assumed or rejected under section 365 of the Bankruptcy Code.

U.     Settlement or Adjustment of Claims and Provisions Not Inconsistent with the Bankruptcy Code (11 U.S.C. §§ 1123(b)(3)(A) and 1123(b)(6)). As contemplated by sections 1123(b)(3)(A) and 1123(b)(6), the Plan incorporates the compromise and settlement of the 2002-2004 Ephedra PI Claims and Other Participating Ephedra Claims through the 2002-2004 Ephedra PI Settlement Agreement and certain releases and injunctions related and necessary thereto.

V.    Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code.  The

Debtors have complied with the applicable provisions of the Bankruptcy Code, including the

provisions of sections 1125 and 1126 of the Bankruptcy Code, and except as otherwise provided

or permitted by orders of the Court.  The Debtors have complied with the applicable provisions

of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court's Local Rules in

transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices

and in soliciting and tabulating the votes on the Plan.

W.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code.  No objections have been filed to the Plan on the

grounds of lack of good faith.  Pursuant to Bankruptcy Rule 3020(b)(2), the Court may therefore

determine that the Plan has been proposed in good faith and not by any means forbidden by law

without receiving evidence on such issues.  The Debtors' good faith is evident, however, from

the facts and record of these chapter 11 cases, the Disclosure Statement, and the record of the

Confirmation Hearing and other proceedings held in the Debtors' chapter 11 cases and the Multi

District Litigation.  The Plan provides for the liquidation of the Debtors, with distribution to

creditors in accordance with the priorities afforded under the Bankruptcy Code.  The Plan is the

culmination of extensive good faith, arms-length negotiations among the Debtors, the Creditors

Committee and the Ephedra Claimants Committee, among others.  The Plan incorporates the

2002-2004 Ephedra PI Settlement Agreement, which itself was negotiated in accordance with the

directives of the Court and is supported by the Debtors, their insurers, the Creditors Committee,

the Ephedra Claimants Committee, the Settling Third Parties, and the individual holders of 2002-

2004 Ephedra PI Claims and Other Participating Ephedra Claims. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates for distribution to their creditors.

        X.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in connection with their chapter 11 cases, or in connection with the Plan and incident to their chapter 11 cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

        Y.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. On July 15, the Debtors filed a notice disclosing the identity of Denis O'Connor as the Plan Administrator and also describing his compensation to be earned as Plan Administrator.

        Z.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan. The Debtors are liquidating and no governmental regulatory commission will have jurisdiction over the rates of the Debtors.

        AA.      <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The updated liquidation analysis attached to the O'Connor Declaration and supported by the O'Connor Declaration, and other evidence proffered or adduced at the Confirmation Hearing, (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than

the amount that such holder would receive or retain if the applicable Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

BB.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (Pre-2002 Ephedra PI Claims) are Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Class 4 (2002-2004 Ephedra PI Claims) (unanimously) and Class 5 (General Unsecured Claims) (by a substantial majority) have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code.  Class 6 (Punitive Damage Claims) and Class 7 (Equity Interests) are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) is not satisfied with respect to the deemed rejection of Class 6 and Class 7, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class 6 and Class 7.

CC.    Treatment of Administrative Expense Claims, Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.  In accordance with section 1129(a)(9)(A), the Plan provides that, on the Effective Date, the Debtors shall pay each holder of an Allowed Administrative Expense Claim an amount in Cash equal to the Allowed amount of such Claim.  In accordance with section 1129(a)(9)(B), the Plan provides that each holder of an Allowed Priority Non-Tax Claim shall be paid an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim.  In accordance with section 1129(a)(9)(C), the Plan provides that each holder of an Allowed Priority Tax Claim shall be paid an amount in Cash equal to the amount of such Claim.

All Allowed Priority Tax Claims not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

DD.    Acceptance By Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).  As set forth in the Voting Affidavits, at least one Class of impaired claims against each Debtor has accepted the Plan, determined without including any acceptance of the Plan by insiders, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.  Specifically, both Classes of impaired Claims entitled to vote on the Plan (Class 4 and Class 5) have voted to accept the Plan by the requisite majorities mandated under section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider.  The evidence set forth in the Voting Affidavits (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes the voting results with respect to the Plan.

EE.    Feasibility (11 U.S.C. § 1129(a)(11)).  Because the Plan provides for the liquidation of the Debtors, the Plan is feasible if the Debtors will be able to satisfy the conditions precedent to the Effective Date (as defined in the Plan) and otherwise have sufficient funds to meet their post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the chapter 11 cases.  The evidence set forth in the O'Connor Declaration and otherwise proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that the Debtors will have sufficient funds to meet their post-confirmation date obligations, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

FF.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that all fees due and payable

pursuant to section 1930 of chapter 123 of title 28 of the United States Code  have been or will

be paid on the Effective Date or as soon thereafter as is practicable.

GG.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors

do not have obligations to provide retiree benefits.  Accordingly, the Bankruptcy Code section

1129(a)(13) is inapplicable to the Plan.

HH.    Subordination of Punitive Damage Claims (11 U.S.C §§ 726(a)(4),

1129(a)(7), and 105(a)).  Punitive Damage Claims are properly subordinated by the Plan based

on (i) the interplay between sections 724(a)(4) and 1129(a)(7) of the Bankruptcy Code, and/or

(ii) the equitable powers provided under section 105(a) of the Bankruptcy Code.  The Debtors'

estates are not sufficient to pay all unsecured claims in full.  Under a chapter 7 liquidation, no

Punitive Damage Claims would be payable out of the Debtors' estates.  Assuming section

726(a)(4) applies in analyzing the best interests test, the Plan would not pass the best interests

test if it did not separately classify and subordinate Punitive Damage Claims or if it proposed to

pay any Punitive Damages to creditors (absent unanimous consent by all voting creditors).  In

addition, Punitive Damage Claims serve neither a deterrent nor a punishment purpose in the

Debtors' cases.  The Debtors ceased operating their businesses upon the closing of the sale of

substantially all of the their assets in December 2003 and are now liquidating.  Moreover,

distributions on account of Punitive Damage Claims would visit a hardship on creditors for

wrongs attributed to others and would be inequitable.  Furthermore, no objections were filed with

respect to the separate classification and subordination of Punitive Damage Claims.

II.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).

Class 6 and Class 7 are deemed to have rejected the Plan.  Based upon the pleadings submitted

and the evidence proffered, adduced, and/or presented by the Debtors at or before the

Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with

respect to Class 6 (Punitive Damage Claims) and Class 7 (Equity Interests), as required by

sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. The Plan does not discriminate against

Class 6 because (i) Class 6 is comprised of Claims dissimilar to the Claims and Equity Interests

in all other Classes and (ii) taking into account the particular facts and circumstances of the case,

there is a reasonable basis for disparate treatment. See paragraph HH above. Class 7 is the only

Class consisting of Equity Interests under the Plan. Accordingly, the Plan does not discriminate

unfairly as between any similarly situated holders of equity interests in the Debtors. Equity

Interests in Class 7 are not entitled to receive a distribution under the Plan. Therefore, no Claims

or Equity Interests junior to Class 6 Claims will receive property under the Plan and the Plan

satisfies the absolute priority rule with respect to Class 6 pursuant to section 1129(b)(2)(B) of the

Bankruptcy Code. There are no Classes junior to Class 7, and creditors in the Classes senior to

Class 7 will not be paid in full. The Plan therefore satisfies the absolute priority rule of section

1129(b)(2)(C) of the Bankruptcy Code with respect to Class 7.

JJ.    Approval of the 2002-2004 Ephedra PI Settlement Agreement

(Bankruptcy Rule 9019(a), 11 U.S.C. § 1123(b)(6)). The evidence and arguments made,

proffered, or adduced at the hearings held before the Court during the pendency of the chapter 11

cases, including the Disclosure Statement, the O'Connor Declaration, and the Littrell

Declaration, and representations of counsel, demonstrate that (i) the Debtors' exercised their

sound business judgment in entering into the 2002-2004 Ephedra PI Settlement Agreement,

which was the result of arms length, good faith and arduous multi-party Court-ordered

mediation, (ii) the 2002-2004 Ephedra PI Settlement Agreement is fair and equitable, reasonable,

and in the best interests of the Debtors' estates, and (iii) clearly falls above the lowest range of

reasonableness. The evidence and arguments are persuasive and credible and have not been controverted by other evidence. The Ephedra PI Settlement Agreement was negotiated in good faith, at arms length, in accordance with the directives of the Court, and is supported by the Debtors, their insurers, the Creditors Committee, the Ephedra Claimants Committee, the Settling Third Parties, and the individual holders of 2002-2004 Ephedra PI Claims and Other Participating Ephedra Claims. The 2002-2004 Ephedra PI Settlement Agreement will allow the Debtors to fairly and efficiently liquidate their estates by resolving their largest outstanding contingencies. The establishment of the Ephedra Personal Injury Trust and the channeling of Class 4 Claims to the Ephedra Personal Injury Trust is a valid plan mechanism for resolving unliquidated claims to the substantial benefit of all impaired Claims. Accordingly, the Court approves the 2002-2004 Ephedra PI Settlement Agreement

KK.    Plan Releases and Injunctions (Bankruptcy Rule 9019(a), 11 U.S.C. §§ 1123(b)(3)(A) and 1123(b)(6)). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) to approve the releases and injunctions set forth in Sections 10.5 and 10.6 of the Plan. Additionally, the Court has jurisdiction over each of the parties in the Multi District Litigation. The evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the chapter 11 cases, including the Disclosure Statement, the O'Connor Declaration, and the Littrell Declaration, demonstrates that the incorporation of the releases in Section 10.5 of the Plan (as modified by this Confirmation Order), including of the Released Parties pursuant to Section 10.5(a) of the Plan, was (i) fair and equitable, reasonable, and in the best interests of the Debtors' estates and creditors, and (ii) supported by special circumstances justifying such unusual relief. The release of the Released Parties pursuant to Section 10.5(a) of the Plan was in consideration for the 2002-2004 Ephedra PI Settlement Agreement and Third

Party Settlement Amounts, which form the basis for, and constitute the primary source for the funding of, the Plan. Section 105(a) of the Bankruptcy Code permits the issuance of injunctions and approval of the releases set forth in Sections 10.5 (as modified by this Confirmation Order) and 10.6 of the Plan if, as has been established here, such provisions are essential to the formulation and implementation of the Plan, are made in return for substantial consideration channeled to a settlement fund, and therefore, confer a material benefit on the Debtors' estates and creditors. The third-party release and injunction provisions of the Plan (as modified by this Confirmation Order) approved by this Confirmation Order are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code. They were negotiated at arms length during Court-ordered mediation of the central issues in these chapter 11 cases, and are the quid pro quo for a settlement fund that materially benefits all unsecured creditors of the estate, without which it is unlikely that any chapter 11 plan would be confirmed.

LL.    Notwithstanding the Court's denial of the Debtors' request for approval of the release of the Blechmans contained in Section 10.5(b) of the Plan and related injunctive relief, for the reasons stated in the Court's bench ruling, including that the proposed release of the Blechmans was not, unlike the release and injunction for the benefit of the Released Parties, necessary to the formulation and implementation of the Plan, the Debtors and the Creditors Committee have complied with their obligations under the Blechman Agreement with respect thereto.

MM.    Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

NN.    <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters set forth in Section 11 of the Plan and section 1142 of the Bankruptcy Code.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The solicitation of votes on the Plan complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

2.    <u>Confirmation</u>.  The Plan and each of its provisions (except as modified by this Confirmation Order) are hereby confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan (except as modified by this Confirmation Order) and the exhibits thereto, including the 2002-2004 Ephedra PI Settlement Agreement, are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

3.    <u>Binding Effect</u>. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any holder of a Claim against or Equity Interest in the Debtors and their respective successors and assigns, whether or not such Claim or

Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

        4.     <u>Plan Settlements</u>.  To the extent that the Plan provides for the compromise or settlement of Claims and controversies resolved pursuant to the Plan, this Confirmation Order shall constitute an order under Bankruptcy Rule 9019 approving such compromise.  The 2002-2004 Ephedra PI Settlement Agreement is hereby approved in its entirety.

        5.     <u>Dismissal of Cases</u>.  On the date this Confirmation Order becomes a Final Order, each of the cases subject to the 2002-2004 Ephedra PI Settlement Agreement (listed on Exhibit "B" attached hereto) shall be dismissed with prejudice; provided, however, that such dismissals shall not include the dismissal of claims against Metabolife International, Inc.  In accordance with paragraph 5 of the 2002-2004 Ephedra PI Settlement Agreement, as soon as is practicable, counsel for the Plaintiffs (as that term is defined in the 2002-2004 Ephedra PI Settlement Agreement) shall serve upon the Special Master the confidential breakdown of the settlement amount to be paid to each individual plaintiff and the amount to be paid in fees and disbursements to the plaintiff's individual counsel and to coordinating counsel.

        6.     <u>Exculpations and Limitation of Liability</u>.  As of the Effective Date, none of (i) the Debtors and the Debtors' officers, directors, and employees, (ii) the Creditors Committee, (iii) the Ephedra Claimants Committee, and (iv) the members, ad hoc members, representatives, accountants, financial advisors, investment bankers, consultants, and attorneys of the Entities described in (i) through (iii) of this paragraph shall have or incur any  liability to any person for any act taken or omission in such capacity, after the Commencement Date, in connection with or related to the Chapter 11 Cases or the operations of the Debtors' businesses during the Chapter 11 Cases, including but not limited to (i) formulating, preparing,

disseminating, implementing, confirming, consummating or administrating the Plan (including

soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract,

instrument, release or other agreement or document entered into or any action taken or omitted to

be taken in connection with the Plan or the Disclosure Statement; or (iii) any distributions made

pursuant to the Plan.  Nothing in the foregoing or Section 10.4 of the Plan shall (i) be construed

to release or exculpate any non-Debtor from fraud, gross negligence, willful misconduct,

malpractice, criminal conduct, unauthorized use of confidential information that causes damages,

or ultra vires acts, or (ii) limit the liability of the professionals of the Debtors to their clients

pursuant to DR 6-102 of the Code of Professional Responsibility.

       7.    <u>Releases of the Released Parties</u>.  Pursuant to Section 10.5(a) of the Plan,

on the Effective Date, and except for the obligations arising under or in connection with the Plan,

the Debtors, the Creditors Committee, the Ephedra Claimants Committee, and all Creditors, for

themselves, their successors and assigns, and the Estates, shall fully, finally, and irrevocably

release and forever discharge the Released Parties of and from any and all past, present, and

future claims, rights, actions, demands, injuries, damages, compensation, or Causes of Action of

whatsoever kind or nature, arising out of or otherwise relating to the manufacture, marketing,

sale, distribution, fabrication, advertising, supply, production, use, or ingestion of ephedra or

ephedra-containing products designed, manufactured, fabricated, sold, supplied, produced, or

distributed by one or more of the Debtors, whether foreseen or unforeseen, known or unknown,

contingent or actual, liquidated or unliquidated, whether in tort or contract, whether statutory or

at common law (including, without limitation, claims under section 506(c) of the Bankruptcy

Code) which they have or may have as of the Confirmation Date, arising from the beginning of

the world up to the Confirmation Date, <u>provided</u>, <u>however</u>, that such release does not include

claims against the Settling Third Parties in connection with the Pre-2002 Ephedra PI Claims;

provided, further, that such release does limit the liability of GNC in each of the Pre-2002

Ephedra PI Claims to the proceeds of the Debtors' applicable insurance policy or policies and

further limits the recovery of any holder of a Pre-2002 Ephedra PI Claim solely to such insurance

proceeds in connection with any claim against GNC; provided, further, however,  that the

foregoing limitations contained herein and in Section 10.5(a) of the Plan in connection with the

Pre-2002 Ephedra PI Claims and on the recovery of any holder of a Pre-2002 Ephedra PI Claim

against GNC shall not apply to, encompass, preclude, or limit the liability of GNC for or to any

claim for Punitive Damages asserted in or by the Pre-2002 Ephedra PI Claims against GNC.

        8.      Releases by the Released Parties.  Pursuant to Section 10.5(c) of the Plan,

on the Effective Date, and except for the obligations arising under or in connection with this

Plan, the Released Parties, for themselves, their successors and assigns, and any person claiming

by, through, or under any of the foregoing shall fully, finally, and irrevocably release and forever

discharge the Debtors and the Estates of and from any and all claims, rights, actions, demands,

injuries, damages, compensation, or Causes of Action which they have or may have as of the

Confirmation Date relating to the Debtors, arising from the beginning of the world up to the

Confirmation Date; provided, however, that such release does not include release of Ephedra

Indemnification Claims in connection with Pre-2002 Ephedra PI Claims, which claims will be

treated in accordance with section 4.3 of the Plan.

        9.      Injunction.  Pursuant to Section 10.6(a) of the Plan, all Entities who have

held, hold, or may hold Claims against or Equity Interests in any or all of the Debtors and other

parties in interest, along with their respective present or former employees, agents, officers,

directors, or principals, are permanently enjoined, on and after the Effective Date, with respect to

all Claims against, and Equity Interests in, any of the Debtors from (i) commencing, conducting,

or continuing in any manner, directly or indirectly, any Cause of Action or other proceeding of

any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or

other forum) against or affecting the Debtors, the Estates, the Plan Administrator, Ephedra

Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released Parties, or

the property of any of the foregoing, (ii) enforcing, levying, attaching (including, without

limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or

means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors,

the Estates, the Plan Administrator, the Ephedra Personal Injury Trust, the Ephedra Personal

Injury Trustee, Ideasphere, the Released Parties, or the property of any of the foregoing, (iii)

creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any

encumbrance of any kind against the Debtors, the Estates, the Plan Administrator, the Ephedra

Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released Parties, or

against the property or interests in property of the Debtors, (iv) asserting any right of setoff,

directly or indirectly, against any obligation due the Debtors, the Estates, the Plan Administrator,

the Ephedra Personal Injury Trust, the Ephedra Personal Injury Trustee, Ideasphere, the Released

Parties, or any of the property of the foregoing, except as contemplated or allowed by the Plan;

(v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or

comply with the provisions of the Plan; (vi) commencing, continuing or asserting in any manner

any Cause of Action or other proceeding of any kind with respect to any Claims and Causes of

Action which are extinguished or released pursuant to the Plan, and (vii) taking any actions to

interfere with the implementation or consummation of the Plan.  Notwithstanding the foregoing,

nothing contained in this paragraph shall prohibit holders of Pre-2002 Ephedra PI Claims from

prosecuting such claims in accordance with section 4.3 of the Plan. Nothing contained in this Confirmation Order or the Plan shall affect, impair, or modify the coverage obligations of any of the Debtors' insurers other than the obligations of AISLIC in connection with the 2002-2004 Ephedra PI Claims which are released in accordance with the terms of the Plan, the 2002-2004 Ephedra PI Settlement Agreement, and this Confirmation Order.

10.     Pursuant to Section 10.6(b) of the Plan, all persons are permanently enjoined, on and after the Effective Date, from asserting any Claim (x) which is released by such person under the Plan (as modified by this Confirmation Order) or (y) for which the party against whom such Claim is being asserted has received exculpation under the Plan, including: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any Cause of Action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of such Claim, (ii) enforcing, levying attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of such Claim, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of such Claim (iv) asserting any right of setoff, directly or indirectly, against any obligation on account of such claim (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (vi) commencing, continuing or asserting in any manner any Cause of Action or other proceeding of any kind with respect to any such Claim, and (vii) taking any actions to interfere with the implementation or consummation of the Plan.

11.     <u>Terms of Pre-Plan Injunctions and Stays</u>. Pursuant to Section 10.8 of the Plan, unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the

Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases

under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and

the date indicated in such applicable order.  Unless otherwise ordered by the Bankruptcy Court,

on and after the Confirmation Date, any "fifty percent shareholder" within the meaning of

section 382(g)(4)(D) of the Tax Code shall be enjoined from claiming a worthless stock

deduction with respect to any Equity Interest held by such shareholder for any taxable year of

such shareholder ending prior to the Effective Date.

       12.    <u>Deemed Consolidation for Plan Purposes</u>.  Pursuant to Section 7.1 of the

Plan, on the Effective Date, (i) all guaranties of any Debtor of the payment, performance, or

collection of obligations of another Debtor shall be eliminated and canceled, (ii) any obligation

of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be

treated as a single obligation, and such guaranties shall be deemed a single Claim against the

deemed consolidated Debtors, (iii) all joint obligations of two or more Debtors and all multiple

Claims against such entities on account of such joint obligations shall be treated and allowed

only as a single Claim against the deemed consolidated Debtors, (iv) all Claims between or

among the Debtors shall be canceled, and (v) each Claim filed in the Chapter 11 Case of any

Debtor shall be deemed filed against the deemed consolidated Debtors and a single obligation of

the deemed consolidated Debtors on and after the Effective Date.  Such deemed consolidation,

however, shall not affect the legal and organizational structure of the Debtors and each of TL

Administration Corporation, TL Administration Inc., and TL Administration (UK) ltd. shall be

governed by their respective certificate of incorporation and by-laws.

13.    <u>Plan Administrator</u>.  Pursuant to Section 7.2 of the Plan, Denis O'Connor, the Debtors' current Operating Officer and a Managing Director at AlixPartners, LLC, the Debtors current financial advisors, is hereby appointed to serve without bond as the Plan Administrator to implement or cause to be implemented the terms of the Plan with respect to the consolidated Debtors; <u>provided</u> that Mr. O'Connor's performance in making Plan distributions is covered by insurance of AlixPartners, LLC.  The Plan Administrator shall be compensated according to terms substantially similar to the terms approved by orders of the Bankruptcy Court dated September 4, 2003, and July 14, 2004, for the retention of the Debtors' financial advisors, FTI Consulting, LLC and AlixPartners, LLC, respectively (i.e., at the normal hourly billing rates and disbursement charges billed to his other clients in the ordinary course).

14.    <u>Corporate Action</u>.  Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Plan, in the time period allocated therefor, and all matters provided for under the Plan that would otherwise require approval of the stockholders, partners, members, directors, or comparable governing bodies of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the states in which the Debtors are incorporated or organized, without any requirement of further action by the stockholders, members, or directors (or other governing body) of the Debtors.  Each of the Debtors shall be authorized and directed, following the completion of all disbursements, other transfers, and other actions required of the Debtors by the Plan, to file its certificate of cancellation or dissolution as contemplated by Section 7.9 of the Plan.  The filing of such certificates of cancellation, dissolution, or merger shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including, without

express or implied limitation, any action by the stockholders, members, or directors (or other governing body) of the Debtors.

        15.    <u>Effectuating Documents and Further Transactions</u>.  Each of the officers of each of the Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

        16.    <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>.  Pursuant to Section 10.1 of the Plan, as of the Effective Date, and pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' estates shall vest in the Debtors or such other entity as provided in the Plan, free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided in the Plan or in this Confirmation Order.  From and after the Effective Date, the Plan Administrator and the Ephedra Personal Injury Trustee may dispose of, or cause to be disposed of, the assets of the Debtors and the Ephedra Personal Injury Trustee, free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plan and the Ephedra Personal Injury Trust Agreement.

        17.    <u>Effective Date Payments and Transfers</u>.  On the Effective Date, or, as soon thereafter as reasonably practicable, the Plan Administrator shall (i) remit, to each holder of an Allowed Non-Ephedra Claim (as of the Distribution Record Date) against the Debtors, the distribution provided for such Claim under the Plan and (ii) pay and transfer to the Ephedra Personal Injury Trust (or cause the Settlement Escrow Agent to pay and transfer to the Ephedra Personal Injury Trust) the Cash and assets to be paid and transferred to the Ephedra Personal Injury Trust pursuant to section 5.3 of the Plan.

18.    <u>The Objections</u>.  Having examined the proposed third-party releases of the Blechmans contained in the Plan and having considered the Cirak Objection and the argument of counsel for Lackowski and Felts,  (i) the releases and injunctions in favor of the Blechmans contained in the Plan are not approved; (ii) Section 10.5(b) of the Plan shall be void and without effect;  (iii) the injunctions provided for in Section 10.6 of the Plan in favor of the Blechmans are void and without effect; and (iv)  insofar as the Cirak Objection and argument of other counsel sought disapproval of the proposed third-party releases in favor of the Blechmans in the Plan, such objection is granted.  The remainder of the Cirak Objection and all other Objections, responses to, and statements and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved, shall be, and hereby are, overruled for the reasons stated on the record.

19.    <u>Retention of Causes of Action</u>.  Pursuant to Section 10.3 of the Plan and except as otherwise provided in the Plan (including section 12.1 of the Plan), on and after the Effective Date, the Debtors will have the exclusive right to enforce any and all Causes of Action against any person.  The Debtors may pursue, abandon, settle, or release any or all Causes of Action (other than Causes of Action released under the Plan), as they deem appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Plan Administrator may pursue, abandon, settle, or release any or all such Causes of Action as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.  The Debtors may, in their sole discretion, offset any such claim held against a person against any payment due such person under the Plan; <u>provided</u>, <u>however</u>, that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Commencement Date.

20.    Objections to Claims.  Pursuant to Section 7.6 of the Plan, any objections to Non-Ephedra Claims shall be served and filed on or before the later of (a) 120 days after the Effective Date and (b) such later date as may be fixed by the Court.  If any portion of a Non-Ephedra Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.  Pursuant to Section 5.1 of the Plan, 2002-2004 Ephedra PI Claims and Other Participating Ephedra Claims shall be resolved in accordance with the terms of the Ephedra PI Trust Agreement and the Ephedra PI Claims Resolution Facility.

21.    Estimation of Claims.  The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Non-Ephedra Claim including, without limitation, any Consumer Class Action Claim, pursuant to section 502(c) of the Bankruptcy Code or otherwise regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain exclusive jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Non-Ephedra Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Non-Ephedra Claims may be estimated and subsequently disallowed, reduced,

compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

22.    <u>Resolution of Disputed Claims</u>.  Within sixty (60) days of a Disputed Non-Ephedra Claim becoming an Allowed Claim, the Plan Administrator shall remit to the holder of such Allowed Claim Cash equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim had been an Allowed Claim as of the Effective Date.  To the extent that a Disputed Non-Ephedra Claim is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Cash that would have been distributed to the holder of the Disputed Claim if the Claim had been Allowed in full over the amount of Cash actually distributed on account of such Disputed Claim shall be Available Cash.  Holders of Disputed Non-Ephedra Claims shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim except to the extent such holder is entitled to interest under the Plan as a holder of an Allowed Claim.

23.    <u>Executory Contracts and Unexpired Leases</u>.  On the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors prior to the Effective Date.

24.    <u>Rejection Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan</u>.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party

or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or any property to be distributed under the Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Plan Administrator on or before the date that is thirty (30) days after notice of the Confirmation Date and such bar date has been provided to the holder of such Claim.

25.    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Ephedra Personal Injury Trust and transfers and assignments of assets to Ideasphere pursuant to the Purchase Agreement) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

26.    <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters arising under, arising out of, or related to the Debtors' chapter 11 cases and the Plan, as set forth in Section 11 of the Plan and pursuant to sections 105(a) and 1142 of the Bankruptcy Code.

27.    <u>Dissolution of Creditors Committee and Ephedra Claimants Committee</u>. Pursuant to Section 12.1 of the Plan, the Creditors Committee and the Ephedra Claimants Committee shall dissolve on the Effective Date, or as soon thereafter as is reasonably practicable to permit the (i) Creditors Committee and the Ephedra Claimants Committee and their respective professionals the right to pursue, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 11.1(h) of the Plan and (ii) Creditors

Committee the right to continue to pursue, or compromise and settle, any litigation commenced

by the Creditors Committee on behalf of the Debtors prior to the Effective Date.

          28.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be

deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy

Code.

          29.     <u>Payment of Statutory Fees</u>.  All fees due and payable pursuant to section

1930 of chapter 123 of title 28 of the United States Code have been or will be paid on the

Effective Date or as soon thereafter as is practicable.

          30.     <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall

constitute all approvals and consents required, if any, by the laws, rules, or regulations of any

state or any other governmental authority with respect to the implementation or consummation of

the Plan and any documents, instruments, or agreements, and any amendments or modifications

thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement,

and any documents, instruments, or agreements, and any amendments or modifications thereto.

          31.     <u>Final Fee Applications</u>.  Any and all entities seeking an award by the

Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred

through and including the Confirmation Date, including any such applications under sections

503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, (i) shall file their

respective final applications for allowance of compensation for services rendered and

reimbursement of expenses incurred by the date that is ninety (90) days after the Effective Date

and (ii) shall be paid in full in such amounts as are allowed by this Court (A) five (5) Business

Days after the date upon which the order relating to any such Administrative Expense Claim is

entered or (B) upon such other terms as may be mutually agreed upon between the holder of such

an Administrative Expense Claims and the Debtors, or, if on or after the Effective Date, the Plan

Administrator.

32.    <u>Post-Confirmation Date Fees and Expenses of Professionals</u>.  The Debtors

shall, in the ordinary course of business and without the necessity for any approval by the

Bankruptcy Court, pay the reasonable fees and expenses, incurred after the Confirmation Date,

of the professional persons employed by the Debtors, the Ephedra Claimants Committee, and the

Creditors Committee in connection with the implementation and consummation of the Plan, the

claims reconciliation process, and any other matters as to which such professionals may be

engaged.  The fees and expenses of such professionals shall be paid within ten (10) Business

Days after submission of a detailed invoice therefor.  If the Plan Administrator disputes the

reasonableness of any such invoice, the Plan Administrator shall timely pay the undisputed

portion of such invoice, and the Plan Administrator or the affected professional may submit such

dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

33.    <u>Modification of Plan</u>.  Upon reasonable notice to the Creditors Committee

and the Ephedra Claimants Committee, the Plan may be amended, modified, or supplemented by

the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise

permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code,

except as the Court may otherwise direct.  In addition, after the Confirmation Date, so long as

such action does not materially adversely affect the treatment of holders of Claims or Equity

Interests under the Plan, the Debtors may institute proceedings in the Court to remedy any defect

or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect

to such matters as may be necessary to carry out the purposes and effects of the Plan.  Prior to

the Effective Date, the Debtors may make appropriate technical adjustments and modifications to

the Plan without further order or approval of the Bankruptcy Court, provided that such technical

adjustments and modifications do not adversely affect in a material way the treatment of holders

of Claims or Equity Interests.  Notwithstanding the foregoing, without the consent of the Settling

Third Parties, the Plan may not be amended pursuant to this paragraph if after such amendment,

the Plan would not include the Plan Release and Injunction in Favor of Settling Third Parties as

provided in paragraph 4 of the 2002-2004 Ephedra PI Settlement Agreement.

> 34.     <u>Severability</u>.  Each term and provision of the Plan, as it may have been

altered or interpreted by the Court, is valid and enforceable pursuant to its terms.

> 35.     <u>Notice of Entry of Confirmation Order</u>.  On or before the date that is ten

(10) days after entry of this Confirmation Order, the Debtors shall serve by first class mail a

notice of the entry of this Confirmation Order, in substantially the form annexed hereto as

Exhibit "C" (the "<u>Confirmation Notice</u>"), to each of the following at their respective addresses

last known to the Debtors: (i) the Office of the United States Trustee for the Southern District of

New York, (ii) the attorneys for the Creditors' Committee, (iii) the attorneys for the Ephedra

Claimants Committee, (iv) all parties entitled to notice pursuant to the Bankruptcy Court's order

dated September 12, 2003 establishing certain notice procedures in these chapter 11 cases, (v)

the Plaintiffs' Coordinating Counsel listed in the District Court's CMO No. 1, (vi) the

Defendants' Coordinating Counsel listed in the District Court's CMO No. 1, (vii) the Securities

and Exchange Commission and the District Director of the Internal Revenue Service for the

Southern District of New York, (viii) all persons or entities listed in the Debtors' schedules of

assets and liabilities, or any amendments thereto, (ix) any other known holders of Claims against

or Equity Interests in the Debtors, and (x) parties to executory contracts or unexpired leases

rejected pursuant to the Plan.  Such service shall constitute good and sufficient notice pursuant to

Bankruptcy Rule 2002(f)(7) and 2002(i)-(l) of the confirmation of the Plan and entry of this

Confirmation Order.  The Debtors shall also cause the Confirmation Notice to be published as

promptly as practicable after the Effective Date once in each of The Wall Street Journal

(National Edition) and The New York Times (National Edition).

       36.    Conditions to Effective Dates.  The Plan shall not become effective unless

and until the conditions set forth in Section 9.2 of the Plan have been satisfied or waived

pursuant to Section 9.5 of the Plan.

       37.    Governing Law.  Except to the extent that the Bankruptcy Code or other

federal law is applicable, the rights, duties, and obligations arising under the Plan shall be

governed by, and construed and enforced in accordance with, the laws of the State of New York

without giving effect to the principles of conflict of laws thereof.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

38.    <u>Conflicts Between Confirmation Order and Plan</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.  To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Court.

Dated:  New York, New York
        July 26, 2005

/s/ JED S. RAKOFF
THE HONORABLE JED S. RAKOFF
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


/s/ ROBERT D. DRAIN
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK