```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
In re: EPHEDRA PRODUCTS LIABILITY       :    04 M.D. 1598 (JSR)
LITIGATION                              :
                                        :
----------------------------------------X
PERTAINS TO ALL CASES
```

### STATUS ORDER (INCLUDING CASE MANAGEMENT ORDER NO.18)

JED S. RAKOFF, U.S.D.J.

At the monthly status conference held on October 6, 2005, the Court made the following rulings, which are hereby confirmed (and in some instances modified and supplemented) as follows:

1. The time of the next status conference, to be held on November 3, 2005, is <u>changed to 10 am</u>.

2. Plaintiff's motion to amend the complaint in *Schneider v. Rexall Sundown* et al., No. 04 Civ. 6822, is granted as unopposed.

3. Plaintiff's motion in *Starks v. BioGro Products LLC* et al., No. 05 Civ. 7219, to dismiss defendant BioGro Products LLC and add Magic Herb as a party defendant, is granted as unopposed.

4. In light of the stay of discovery in the non-Metabolife cases from August 24 to October 6, 2005, the litigation schedule set forth in previous Case Management Orders is modified as follows:

|  | Fact Discovery Cut-off and Deadline for Plaintiffs to Serve Case-Specific Expert Disclosures | Deadline for Defendants to Serve Case-Specific Expert Disclosures and for Discovery of Plaintiffs' Case-Specific Experts | Deadline for Discovery of Defendants' Case-Specific Experts | Deadline to File Daubert Motions Regarding Case-Specific Experts |
|---|---|---|---|---|
| **Original MDL and Twinlabs Cases** |  | 11/18/05 | 1/23/06 | 2/9/06 |
| **CTO-1 Cases** | 10/21/2005 | 12/21/2005 | 2/20/2006 | 3/6/2006 |
| **CTO-2 Cases** | 11/18/2005 | 1/23/2006 | 3/24/2006 | 4/10/2006 |
| **CTO-3 Cases** | 12/21/2005 | 2/20/2006 | 4/20/2006 | 5/4/2006 |
| **CTO-4 Cases** | 1/23/2006 | 3/24/2006 | 5/23/2006 | 6/8/2006 |
| **CTO-5 Cases** | 1/30/2006 | 3/31/2006 | 5/30/2006 | 6/15/2006 |
| **CTO-6 through CTO-12 Cases** | 2/28/2006 | 4/28/2006 | 6/30/2006 | 7/14/2006 |
| **TL "Subsequent Cases" TL "Converted Cases"** | 3/28/2006 | 5/30/2006 | 7/28/2006 | 8/14/2006 |
| **CTO-13 through CTO-17 Cases** | 4/28/2006 | 6/30/2006 | 8/31/2006 | 9/14/2006 |
| **CTO-18 through CTO-27 Cases SDNY Cases** | 6/30/2006 | 8/31/2006 | 10/31/2006 | 11/14/2006 |
| **Later MDL Cases** | 300 days after "Notice of Transfer" | one year after "Notice of Transfer" | one year and 60 days after "Notice of Transfer" | one year and 74 days after "Notice of Transfer" |

Responses to *Daubert* motions shall be served within 14 days after service of the motion papers, and reply papers shall be served within 14 days of the answering papers. Any requests for admission shall be served no later than 30 days before the

applicable Fact Discovery Cut-off, and service of any subpoenas duces tecum shall be made at least 60 days before the applicable Fact Discovery Cut-off. The dates set forth in § XVI of Case Management Order No. 1, as subsequently amended, are modified as follows: a proposed pre-trial order for the original Twinlabs cases shall be jointly submitted on or before April 10, 2006; the final pre-trial conference for the Twinlabs Cases shall be held on April 17, 2006; trial shall commence at 9 a.m. on April 24, 2006.

    5. Upon TL's request for a deadline for plaintiffs in the Twinlabs 2002-2004 cases to submit their confidential breakdowns of attorneys' fees as required by Case Management Orders No. 5 ¶ 1 and No. 7 ¶ 2(d), those plaintiffs in the Twinlabs 2002-2004 Cases who must apply under Local Civil Rule 83.2 for approval of settlements on behalf of minors shall submit their confidential breakdowns on or before December 6, 2005; all others shall submit their beakdowns on or before November 20, 2005.

    6. The Court rules as follows regarding the Special Master's fees:

        (a) Upon TL's request, Case Management Order No. 17 ¶ 4 is amended so that hereafter the Special Master's monthly bills, after Court approval, shall be paid by the Plaintiff's Common Expense Fund, which shall be reimbursed 50% by defendants promptly after each payment by the Fund.

(b) Subject to the approval of the United States Bankruptcy Court for the Southern District of California (in the case of defendants Metabolife International, Inc., Alpine Manufacturing, Inc. and their affiliated entities) and the United States Bankruptcy Court for the District of New Jersey (in the case of defendant N.V.E., Inc.), the defendants' $168,706.00 share of the Special Master's bills dated 4/1/04 through 9/1/05 are allocated to the various defendants as set forth in Table 1, below.

**Table 1**

| Defendant | Allocable Percentage |
|---|---|
| Metabolife International, Inc., Alpine Manufacturing and affiliates (collectively, "Metabolife") | 50 |
| TL Administration | 18 |
| RS OLDCO, Inc. (f/k/a Rexall Sundown, Inc.) and RL OLDCO, Inc. (f/k/a Richardson Labs, Inc.), Nutrition USA, and affiliates | 12 |
| MuscleTech Research | 7 |
| N.V.E., Inc. | 5 |
| Vitaquest International, Inc. | 3 |
| NBTY, Inc. | 3 |
| Herbalife International, Inc. and Herbalife International of America, Inc. | 1 |
| BDI Pharmaceuticals/Body Dynamics Inc. | 1 |
| TOTAL | 100% |

In the event that either or both of the respective

Bankruptcy Courts declines to approve the payment by Metabolife and/or N.V.E. of the amounts allocated to those respective parties in Table 1, the DCC shall so advise this Court and, if the defendants are unable to reach agreement among themselves regarding reallocation of the defendants' shares of the previously-paid Special Master's fees and expenses, the DCC may apply for further instruction regarding that reallocation.

    (c) For the Special Master's bills dated 10/3/05 and thereafter, subject to the approval of the United States Bankruptcy Court for the Southern District of California (in the case of defendants Metabolife International, Inc., Alpine Manufacturing, Inc. and their affiliated entities) and the United States Bankruptcy Court for the District of New Jersey (in the case of defendant N.V.E., Inc.), payment of the defendants' share shall be made in accordance with the following procedures:

        (i) Within three business days after entry of an order approving a bill, Defendants' Liaison Counsel shall deliver a copy of the bill to counsel for all defendants who share responsibility for reimbursement as provided in subparagraph (a), together with a statement of the allocable share of each defendant. Within 15 business days thereafter, each such defendant

shall deliver to Defendants' Liaison Counsel full and complete payment of its allocable share.  Within three business days thereafter, Defendants' Liaison Counsel shall deliver to the Clerk for deposit into the Plaintiffs' Common Expense Fund all funds received by Defendants' Liaison Counsel with respect to the bill, together with a schedule of any shares which were not received by Defendants' Liaison Counsel and, therefore, were not delivered to the Clerk.  Defendants' Liaison Counsel shall send copies of all checks and schedules hereunder to the CPA, to Plaintiffs' Liaison Counsel, and to the Special Master.

(ii) The allocation of responsibility for payment of the defendants' share of the Special Master's invoice dated October 3, 2005, and for payment of the Special Master's invoices rendered thereafter, shall be as set forth in Table 2, below (unless modified, as provided in subparagraph (iii), below):

**Table 2**

| Defendant | Allocable Percentage |
|---|---|
| Metabolife | 42 |
| RS OLDCO, Inc. (f/k/a Rexall Sundown, Inc.) and RL OLDCO, Inc. (f/k/a Richardson Labs, Inc.), Nutrition USA, and affiliates | 11 |
| TL Administration's Insurers | 10 |
| N.V.E., Inc. | 6 |
| MuscleTech Research | 6 |
| The Chemins Co., Inc. | 4 |
| GNC Corp. and affiliates | 4 |
| Wal-Mart Corp. | 4 |
| Walgreen Co. | 4 |
| Vitaquest International, Inc. | 3 |
| NBTY, Inc. | 2 |
| Herbalife International, Inc. and Herbalife International of America, Inc. | 2 |
| BDI Pharmaceuticals/Body Dynamics Inc. | 2 |
| TOTAL | 100% |

In the event that either or both of the respective Bankruptcy Courts declines to approve the payment by Metabolife and/or N.V.E. of the fees and expenses of the Special Master, the DCC shall so advise this Court and, if the defendants are unable to reach agreement among themselves regarding reallocation of the defendants' shares of the Special Master's fees and expenses subject to this paragraph, the DCC may apply

for further instruction regarding that reallocation.

(iii) On the first business day of March, June, September and December of each year, the DCC shall evaluate whether the share allocations set forth in Table 2 are appropriate and fair and shall, if necessary, make and communicate to all affected defendants adjustments to the percentages allocated to each defendant, which shall become effective on the first day of the following month.

(iv) Where a defendant with responsibility for a payment hereunder is entitled to reimbursement from an insurer, that defendant shall make the full payment at the time set forth above without awaiting such reimbursement.  Notwithstanding the foregoing, TL Administration's insurers shall be directly responsible for payment of the shares allocated to TL Administration's Insurers in Table 2 above, which amount is to be allocated in a manner to be determined by TL Administration's Insurers.  Each insurer's liability for payment of such allocated amount shall be several, not joint.

7. At the request of the parties to the adversary proceeding *TL v. Ideasphere, Inc.* et al., No. 05-02376 (RDD), and pursuant to item 6 on page 2 of this Court's Order dated March 22, 2005,

as previously amended, the Court refers this adversary preceding to Judge Drain for all purposes, including decision of the pending motion for summary judgment.

8. The Court denied the PCC's request for an order permitting case-specific experts in MDL cases to testify at trial on the general-causation issues that were assigned to the PCC's "generic experts" and were the subject of the Court's *Daubert* opinion and order.  The PCC, DCC and TL shall consult about the feasibility of creating a videotape, to be admissible at trial in the remanded MDL cases, of generic-expert testimony, by taping a proceeding before this Court that might be merged with a consolidated trial of the Twinlabs cases.  Counsel shall report the results of such consultation at the November status conference.

9. The motion by third-party defendant Robert A. Levine, M.D., for summary judgment dismissing the third-party complaint in *Levine v. Twin Laboratories Inc.*, No. 03 Civ. 9268, is denied.

   (a) <u>Background</u>. Dr. Levine, who practices medicine in Connecticut, is the plaintiff's brother.  Plaintiff, a resident of New York, sued Twinlabs in state court in 1998 alleging that he suffered congestive heart failure as a result of using Ripped Fuel.  Twinlabs moved in state court to serve a third-party complaint for contribution alleging that malpractice by Dr. Levine contributed to plaintiff's

injury, but the New York court denied leave for lack of personal jurisdiction. Twinlabs subsequently filed a Chapter 11 petition in this district and obtained an order under 28 U.S.C. § 157(b)(5) transferring plaintiff's case here. Thereafter, Twinlabs moved again to serve Dr. Levine, this time under Rule 14 Fed. R. Civ. P. Plaintiff opposed the motion on the grounds of the state court ruling, but the motion was granted, Case Management Order No. 5 ¶ 6, because Dr. Levine is subject to process in the Southern District of New York by virtue of Rule 4(k)(1)(B). Now Dr. Levine moves for summary judgment on two grounds: that there was no doctor-patient relationship, and that the third-party complaint was not served within the time set by CONN. GEN. STAT. § 52-102b(a).

(b) <u>Doctor-patient relationship</u>. In opposition to Dr. Levine's first argument, TL submitted (*inter alia*) several letters by Dr. Levine to plaintiff's employer, to a state agency, and to courts in support of medical excuses from jury duty, in which Dr. Levine identified himself as plaintiff's treating or family physician. For example, Dr. Levine sent a medical report and professional opinion to the New York State Department of Temporary and Disability Assistance in support of plaintiff's application for benefits, stating: "I have been seeing [plaintiff] as a

patient for the past 20 years." TL exh. at 37LEV 242-244. From this and similar letters, which are admissible under Rule 801(d)(2) Fed. R. Evid., a reasonable jury could conclude that there was a doctor-patient relationship.

(c) C<small>ONN</small>. G<small>EN</small>. S<small>TAT</small>. § 52-102b(a). Dr. Levine seeks summary judgment on the basis of the following Connecticut statute:

> CHAPTER 898 — PLEADING
> * * *
> **Sec. 52-102b. Addition of person as defendant for apportionment of liability purposes.** (a) A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h.

The parties both argue that this statute conflicts with New York law, and that the conflict is to be resolved under New York's choice-of-law rules. The first conflict to resolve, however, is between the Connecticut statute and federal law. Connecticut requires third-party complaints in negligence actions to be served within 120 days, while Rule 14 Fed. R. Civ. P. provides that they may be served "[a]t any time

11

after commencement of the action." All state laws in conflict with Rule 14 are of "no ... force or effect" unless application of Rule 14 would "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). The initial inquiry, therefore, is whether the Connecticut statute granted Dr. Levine a substantive right limiting his exposure to lawsuits. Examination of Connecticut's statutory scheme persuades the Court that § 52-102b(a) was intended merely to regulate third-party practice in negligence actions tried in state court. For example, another subsection of § 52-102b provides (emphasis added): "(f) This section shall be the exclusive means by which a defendant may *add* a person who is or may be liable [in negligence] for a proportionate share of the plaintiff's damages *as a party to the action*." Significantly, it does not say that § 52-102b is the exclusive means of suing a joint tortfeasor for contribution. On the contrary, an action for contribution by defendants liable in negligence may "be brought within two years after the party seeking contribution has made the final payment in excess of such party's proportionate share of the claim." § 52-572h(h)(2). Similarly, a judgment defendant in products liability may sue for contribution "within one year after the judgment becomes final." § 52-572*o*(e). Clearly, therefore, § 52-102b(a) regulates

only third-party practice in state court as one procedure for asserting the substantive right of contribution. Moreover, the Court agrees with TL that the limitation in § 52-102b(a) to cases under § 52-572h means that § 52-102b(a) does not apply to products liability cases, even if the products liability plaintiff joins claims of negligence. See § 52-572n (products liability "shall be in lieu of all other claims against product sellers, including actions of negligence ...").

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       October 9, 2005